[Cite as *State v. Risner*, 2022-Ohio-3878.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO. 8-21-47

    v.

BRANDON A.M. RISNER,                  **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Trial Court No.  CR 21 01 0015

Judgment Affirmed

Date of Decision:   October 31, 2022

APPEARANCES:

    *Stephen T. Wolfe* for Appellant

    *Sarah J. Warren* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Brandon Risner ("Risner"), brings this appeal from the November 29, 2021 judgment of the Logan County Common Pleas Court sentencing him to an aggregate, indefinite prison term of 32-36 years after Risner was convicted by a jury of 58 crimes. On appeal, Risner argues that there was insufficient evidence presented to convict him of certain offenses, that certain convictions were against the manifest weight of the evidence, that the trial court erred by providing a jury instruction on consciousness of guilt/flight, and that inadmissible hearsay was presented at trial.

*Background*

{¶2} In July and August of 2020, Risner engaged in a "staggering" amount of theft-related crimes, victimizing "virtually every aspect of [the] community." (Nov. 16, 2021, Sent. Tr. at 21, 22). Risner committed theft offenses against a family member, a private business, a school, and numerous individuals who did not know Risner. He stole, *inter alia*, $15,000 in cash, two motor vehicles, nineteen car titles, an ATV, a social security card, a GPS unit, a generator, a shop vac, a diesel programmer, a *significant* number of valuable tools from multiple sources, two .22 rifles, an engine hoist, and a water heater. Risner also caused over $11,000 in damage to the school he broke into.

{¶3} Although he was not apprehended at any of the scenes of the theft offenses, Risner was connected to the crimes from multiple sources. His fingerprints were found at one scene and his DNA was recovered from a separate scene. Cell phone data linked many of the thefts together. In addition, Risner sold some of the items he stole at a pawn shop in Indiana. Risner also worked with an accomplice for multiple theft offenses and the accomplice testified regarding those incidents.

{¶4} Finally, many items Risner had stolen were found at the property of his accomplice, including one of the stolen trucks. As police approached the accomplice's property, Risner and others were present. Risner fled the area and was later apprehended at a hotel in Lima. The second stolen truck was in the hotel's parking lot and Risner had the keys to the stolen truck in his room.

{¶5} On January 12, 2021, Risner was indicted in a 64-count indictment alleging that he committed the following crimes: engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), a second degree felony (Count 1); 28 counts of theft in violation of R.C. 2913.02(A)(1), all fifth degree felonies (Counts 2, 4, 10, 12, 16-35, 42-44, 61); 2 counts of theft in violation of R.C. 2913.02(A)(1), both fourth degree felonies (Counts 13, 14); 4 counts of petty theft in violation of R.C. 2913.02(A)(1), all first degree misdemeanors (Counts 3, 45, 56, 60); 6 counts of breaking and entering in violation of R.C. 2911.13(A), all fifth degree felonies (Counts 5, 9, 36, 53, 59, 62); 5 counts of grand theft of a motor vehicle in violation

of R.C. 2913.02(A)(1), all fourth degree felonies (Counts 6, 15, 50, 55, 58); 3 counts of receiving stolen property in violation of R.C. 2913.51(A), felonies of the fifth, fifth, and fourth degree respectively (Counts 7, 54, 57); 2 counts of grand theft in violation of R.C. 2913.02(A)(1), both fourth degree felonies (Counts 8, 51); tampering with records in violation of R.C. 2913.42(A)(1), a first degree misdemeanor (Count 11); 2 counts of attempted grand theft of a motor vehicle in violation of R.C. 2923.02/R.C. 2913.02(A)(1)/(B)(5), both fifth degree felonies (Counts 37-38); burglary in violation of R.C. 2911.12(A)(2), a second degree felony (Count 39); safecracking in violation of R.C. 2911.31(A), a fourth degree felony (Count 40); theft from a person in a protected class in violation of R.C. 2913.02(A)(1), a third degree felony (Count 41); 3 counts of possessing criminal tools in violation of R.C. 2923.24(A), all fifth degree felonies (Counts 46-48); attempted safecracking in violation of R.C. 2923.02/R.C. 2911.31(A), a fifth degree felony (Count 49); vandalism in violation of R.C. 2909.05(B)(2), a fifth degree felony (Count 52); having weapons while under disability in violation of R.C. 2923.13(A)(2), a third degree felony (Count 63); and criminal damaging or endangering in violation of R.C. 2909.06(A)(1), a second degree misdemeanor (Count 64). Risner pled not guilty to the charges.

{¶6} A jury trial was held from August 30, 2021 to September 3, 2021. Ultimately Risner was convicted of 58 of the counts against him. He was acquitted

of 5 counts, specifically counts 6, 14, 54, 58 and 59. Count 42 was dismissed by the State during jury deliberations.

{¶7} On November 16, 2021, the matter proceeded to sentencing. The State recommended a 40.5-year prison term, while the defense recommended a 17.5-year prison term. For his part, Risner acknowledged committing the crimes and apologized to multiple victims for his offenses.

{¶8} The trial court then determined that some counts should merge for purposes of sentencing, that some counts should be run concurrently, and that some counts should be run consecutively. Ultimately Risner was sentenced to serve an aggregate, indefinite prison term of 32-36 years. A judgment entry memorializing his sentence was filed November 29, 2021. It is from this judgment that Risner appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The evidence presented at trial was insufficient to sustain the convictions.**

**Assignment of Error No. 2**
**The jury's verdicts were against the manifest weight of the evidence.**

**Assignment of Error No. 3**
**The trial court erred in giving a flight instruction to the jury.**

**Assignment of Error No. 4**
**The trial court erred when it allowed hearsay testimony in under the business records exception.**

Case No. 8-21-47

*First Assignment of Error*

{¶9} In his first assignment of error, Risner argues that there was insufficient evidence presented to convict him of engaging in a pattern of corrupt activity and of 18 counts of theft of motor vehicle titles. We emphasize that Risner does not challenge his remaining convictions or make any arguments regarding them.

Standard of Review

{¶10} "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Groce*, 163 Ohio St.3d 387, 2020-Ohio-6671, ¶ 6. Therefore, our review is de novo. *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, ¶ 3. In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow *any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus (superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 102, (1997), fn. 4) following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

Controlling Statutes

{¶11} Risner was convicted of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), which reads:

-6-

> **No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt.**

"Enterprise," for purposes of engaging in a pattern of corrupt activity, is defined in

R.C. 2923.31(C) as including

> **any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. "Enterprise" includes illicit as well as licit enterprises.**

{¶12} Risner was also convicted of 19 counts of theft of motor vehicle titles

in violation of R.C. 2913.02(A)(1)/(B), which reads:

> **(A)   No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:**
>
> **(1)   Without the consent of the owner or person authorized to give consent[.]**
>
> **\* \* \***
>
> **(B)(1) Whoever violates this section is guilty of theft.**
>
> **\* \* \***
>
> **If the value of the property or services stolen is one thousand dollars or more and is less than seven thousand five hundred dollars or if the property stolen is any of the property listed in section 2913.71 of the Revised Code, a violation of this section is theft, a felony of the fifth degree.**[1]

---

[1] Revised Code 2913.71 reads:

Analysis

**{¶13}** Risner presents two primary challenges to the evidence in this case. First, Risner challenges his conviction for engaging in a pattern of corrupt activity by arguing that although he may have committed numerous criminal offenses, "there was no evidence presented of a criminal enterprise." (Appt.'s Br. at 7). Second, Risner argues that there was insufficient evidence presented to convict him of 18 counts of theft of motor vehicle titles from Chariot Motors because those specific 18 titles were never recovered. We will review each of these arguments in turn.

Engaging in a Pattern of Corrupt Activity

**{¶14}** In arguing that there was insufficient evidence to convict him of engaging in a pattern of corrupt activity, Risner claims that the State failed to establish that he engaged in a criminal "enterprise" because there was no evidence that he conducted his activities in association with anyone. He claims that he went on an "unorganized" crime spree that was not in furtherance of any enterprise or entity besides himself. (Appt.'s Br. at 7).

---

**Regardless of the value of the property involved and regardless of whether the offender previously has been convicted of a theft offense, a violation of section 2913.02 or 2913.51 of the Revised Code is a felony of the fifth degree if the property involved is any of the following:**

**\* \* \***

**(D) A blank form for a certificate of title or a manufacturer's or importer's certificate to a motor vehicle, as prescribed by section 4505.07 of the Revised Code[.]**

{¶15} Despite his contention, Risner's arguments are contradicted by the evidence, particularly through the testimony of his accomplice, Tyler Q. ("Tyler"). Tyler testified that at the time of trial he had already pled guilty to multiple counts of receiving stolen property for crimes he committed with Risner.[2]

{¶16} As to the crimes he committed with Risner, Tyler detailed an incident wherein he went with Risner and another person named "JJ" to the "Lamson" residence in a Ford F250 that Risner had previously stolen. At the Lamson residence, Tyler and Risner entered a detached garage and took numerous valuable items belonging to Susan Lamson and Clay Costin.

{¶17} Subsequently, Tyler testified that he went with Risner to steal a "4-wheeler" in Bellefontaine that had been "spotted" by another individual named "John Messner." Tyler testified that he and Risner took the 4-wheeler and the trailer it was on and left the area. A local surveillance camera captured Tyler and Risner leaving the area with the 4-wheeler, corroborating Tyler's testimony.

{¶18} Aside from participating in the thefts themselves, Tyler testified that he was a drug addict and that Risner would give him money and drugs. Tyler testified that he saw Risner have as much as $10,000 to $12,000 in cash.

---

[2] Tyler testified that part of his "deal" with the State was for him to plead guilty to certain charges and testify truthfully in Risner's trial. In exchange the State would recommend that Tyler be given a suspended prison sentence of over 9 years.

{¶19} Law enforcement located Risner at Tyler's residence, though Risner fled the area when law enforcement approached. One of the two stolen trucks was behind Tyler's residence with numerous stolen items inside of it. ATVs that Risner had taken were also at Tyler's residence. Tyler testified he was working on one of the ATVs for Risner.

{¶20} In addition to Tyler, and "JJ," there was evidence to support Risner working with other people as well. Specifically, when Risner went to the pawn shop in Indiana to sell some of the stolen items, he had two people with him. Further, Risner was apprehended on a later date at a motel room in Lima he was sharing with a woman. The other truck Risner stole was in the hotel's parking lot.

{¶21} When viewing the totality of the circumstances, we find that the evidence is consistent with evidence that the Supreme Court of Ohio has found sufficient to establish a criminal enterprise for engaging in a pattern of corrupt activity. In *State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, the Supreme Court of Ohio conducted the following analysis and determined that a pattern of corrupt activity had been established:

> **The record is replete with examples of Beverly and Imber associating together for a common purpose of engaging in a course of conduct. Beverly and Imber drove (and perhaps stole) an Ohio Department of Transportation truck and used it to steal an expensive stump grinder. They used a stolen Chevrolet Caprice in the course of an attempted burglary. And most notoriously, for purposes of this case, they used a stolen truck to commit several burglaries on January 28, 2011. It is clear to us**

> **that the record provides ample support for a rational trier of fact to conclude that Beverly and Imber constituted an association-in-fact enterprise and that they engaged in a pattern of corrupt activity. Indeed, we cannot imagine a trier of fact concluding otherwise.**

*Beverly*, at ¶ 16.

**{¶22}** The facts in this case are comparable to the facts in *Beverly*, thus we do not find that insufficient evidence was presented to convict Risner of engaging in a pattern of corrupt activity, particularly when viewing the evidence in the light most favorable to the State, as we are directed.[3] For all of these reasons, Risner's challenge to his conviction for engaging in a pattern of corrupt activity is not well-taken.

Theft of Motor Vehicle Titles

**{¶23}** Edward H. testified at trial that he owned a used car sale-business called Chariot Motors. Edward testified that the business was "ransacked" on July 30, 2020. (Tr. at 244). He testified that numerous items had been taken, including: a red 2005 Chevy Silverado truck, 19 vehicle titles, 2 .22 rifles, 15 checks, $50-100 cash, and an Archie Griffin signed football.

**{¶24}** Risner was linked to the theft at Chariot Motors from multiple sources. First, when Risner was apprehended at a motel in Lima, the stolen red 2005 Chevy

---

[3] We note that while the evidence may not have perfectly established that *every* crime Risner was convicted of was part of a criminal enterprise, the evidence did affirmatively establish that there were numerous crimes that a trier-of-fact could determine were part of a criminal enterprise.

Silverado was in the parking lot and the keys to the truck were in Risner's room. Second, the title to the 2005 Chevy Silverado was inside the vehicle along with "SNAP assistance paperwork" *specifically addressed to Risner*. The recovered truck also had multiple items in it that had been stolen from other sources such as a diesel programmer, a property tag from the school that had been broken into, and the social security card of another theft victim. Notably, Risner was linked to the school theft through DNA

{¶25} Although the 2005 Chevy Silverado and the title to that truck were located, none of the other 18 titles that were taken from Chariot Motors were ever recovered. Risner now contends that there was insufficient evidence presented to convict him of theft of the 18 vehicle titles that were not actually recovered by law enforcement.

{¶26} Contrary to Risner's argument, 1 of the 19 titles that was taken from Chariot Motors was recovered in the truck that Risner had the keys to, which was parked outside of Risner's motel room. Since Risner had the stolen truck and 1 of the 19 titles that had been taken from Chariot Motors, a reasonable factfinder could determine beyond a reasonable doubt that Risner had taken the other 18 car titles as well as the Chevy Silverado and its title, particularly given that they all went missing at the same time. *See State v. Brelo*, 8th Dist. Cuyahoga No. 87282, 2006-Ohio-4767.

**{¶27}** Based on the evidence presented, and when reviewing it in the light most favorable to the State as we are directed on appeal, we do not find that insufficient evidence was presented to convict Risner of theft of the 18 unrecovered car titles. Having already determined that his challenge to the conviction for engaging in a pattern of corrupt activity is unavailing, Risner's first assignment of error is overruled.[4]

*Second Assignment of Error*

**{¶28}** In his second assignment of error, Risner argues that even if there was sufficient evidence presented to convict him of engaging in a pattern of corrupt activity and theft of the 18 unrecovered car titles, the convictions were against the manifest weight of the evidence.

Standard of Review

**{¶29}** In reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing so, this court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created

---

[4] We again emphasize that Risner did not challenge any of his remaining convictions; however, even if he did, the evidence was sufficient to support the jury's determinations.

such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*.

**{¶30}** Nevertheless, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

Analysis

**{¶31}** Risner summarily argues that for the same reasons he challenged his convictions in the first assignment of error, his convictions for engaging in a pattern of corrupt activity and for 18 counts of theft related to motor vehicle titles were against the manifest weight of the evidence. Risner makes no additional arguments in support of his claims.

**{¶32}** When reviewing the record as a whole, there is an overwhelming amount of evidence tying Risner to the crimes he was convicted of committing. Risner was connected to the crimes by fingerprints, DNA evidence, and cell tower data. Risner was found in possession of some of the stolen items when he was apprehended and his accomplice testified against him at trial. While Risner may

have contended at trial that the accomplice was not credible, there was evidence presented to corroborate the accomplice's testimony. Moreover, we will not second-guess a jury's credibility determinations. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

**{¶33}** Risner's contention that there was no evidence that he worked with other people to create a criminal enterprise is entirely contrary to the facts of this case. Moreover, his claim that he cannot be convicted of theft of the unrecovered motor vehicle titles is not supported by any legal authority.

**{¶34}** In sum, this is a case where overwhelming evidence tied Risner to the many crimes he committed. We cannot find that this is a case where the jury clearly lost its way or created a manifest miscarriage of justice. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. This is particularly true given that the jury returned five acquittals when it determined that the evidence did not meet the threshold of "beyond a reasonable doubt," establishing that the jury was discerning in its deliberations. For all of these reasons, Risner's second assignment of error is overruled.

*Third Assignment of Error*

**{¶35}** In his third assignment of error, Risner argues that the trial court erred by giving a consciousness of guilt/"flight" instruction to the jury.

## Standard of Review

**{¶36}** An appellate court reviews a trial court's decision to give the jury a particular set of jury instructions under an abuse of discretion standard. *State v. Harrison*, 3d Dist. Logan No. 8-14-16, 2015-Ohio-1419, ¶ 61. An abuse of discretion suggests that the trial court's decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

## Analysis

**{¶37}** Prior to trial, the State requested a jury instruction on "flight as evidence of guilt." (Tr. at 26). The defense opposed the instruction and the trial court reserved ruling on the matter until it heard the evidence, stating:

> **The Court hereby instructs the State not to mention flight as evidence of guilt in voir dire or opening statement or until there has been evidence that has been produced during the trial that demonstrates there was flight to be proof as evidence of guilt. So don't say anything about that and we'll take that up at a later date after that, if it comes up, see if it's appropriate or not.**

(Tr. at 26-27).

**{¶38}** During the trial, law enforcement officers testified that they followed Risner's girlfriend in an attempt to locate Risner. The officers followed Risner's girlfriend in an unmarked vehicle in plain clothes. Risner's girlfriend drove to Tyler's residence and parked in the driveway. The officers saw Risner in the yard

of the residence and reversed the unmarked vehicle to confront Risner and the others.

**{¶39}** When the officers pulled into the yard, they got out of the vehicle and approached Risner and the others on foot. Tyler saw the officers, recognized them, said "Oh, shit" aloud, and then he jumped through the open window to his home. The officers identified themselves as being from the Logan County Sheriff's Office, but it is not clear from the testimony if Risner heard them. Regardless the officers testified that Risner "duck[ed] down" initially as they approached and Tyler testified that Risner "book[ed] it into the woods" after Tyler panicked and dove through his window. Risner was not apprehended despite a search of the area. He was found many days later at a motel in Lima.

**{¶40}** After all of the evidence was presented to the jury, the trial court addressed the issue of whether an instruction on "flight" would be given. Defense counsel argued that because the officers were in an unmarked car and because the officers were not in uniform when they approached Risner, a flight instruction regarding consciousness of guilt was not appropriate. The trial court overruled defense counsel's objection to the instruction, reasoning that a reasonable jury could find that Risner fled from law enforcement.

**{¶41}** The following instruction was then given to the jury:

**Testimony has been admitted indicating that after seeing law enforcement the defendant fled the area. You are instructed that**

**this alone does not raise a presumption of guilt but it may tend to indicate the defendant's consciousness or awareness of guilt. If you find that the facts do not support that the defendant fled to avoid the jurisdiction of this court or if you find that some other motive prompted the defendant's conduct or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose; however, if you find that the facts support that the defendant engaged in such conduct and if you decide that the defendant was motivated by a consciousness or awareness of guilt, you may but are not required to consider that evidence in deciding whether the defendant is guilty of the crimes charged. You alone will determine what weight, if any, to give this evidence.**

(Tr. at 856-857).

**{¶42}** Risner argues that it was an abuse of discretion for the trial court to give the preceding instruction. He contends that the evidence actually established that he fled the area before he could have even known that the people approaching Tyler's residence were law enforcement officers. He emphasizes that the officers were in an unmarked vehicle and they were not in uniform. He argues that "it was just as likely someone was coming to harm him, and hence he ran." (Appt.'s Br. at 10).

**{¶43}** Contrary to Risner's argument, there was evidence presented to support the trial court giving a "consciousness of guilt/flight" instruction to the jury specifically through the testimony of the officers that approached Risner before he fled Tyler's property and through Tyler's testimony that he was aware of who the officers were. For this reason alone we could find no abuse of discretion here

because the instruction was supported by the evidence. *See State v. Lewis*, 4th Dist. Ross No. 14CA3465, 2016-Ohio-1592.

**{¶44}** Moreover, the trial court also gave an instruction that left the interpretation of the evidence fully within the jury's discretion, indicating that if the jury felt Risner had a different motivation (like fear of harm) or if the jury could not discern Risner's motivation at all *then the jury should not consider the evidence for any purpose.* "[A]n appellate court must review jury instructions in the context of the entire charge." *State v. Barker,* 11th Dist. Portage No. 2010–P0044, 2012-Ohio-522, ¶ 91, citing *State v. Hardy,* 28 Ohio St.2d 89, 92 (1971).

**{¶45}** In sum, the jury instruction was supported by the evidence presented at trial. Separately, in context of the entire jury charge, we cannot find an abuse of discretion here. For both of these reasons, Risner's third assignment of error is overruled.

*Fourth Assignment of Error*

**{¶46}** In his fourth assignment of error, Risner argues that the trial court permitted inadmissible hearsay at trial. Specifically, Risner argues that purported business records were presented to the jury without proper identification and authentication as records maintained in the ordinary course of business pursuant to Evid.R. 803(6).

Case No. 8-21-47

Standard of Review

**{¶47}** A trial court has broad discretion over the admission or exclusion of evidence, and a reviewing court generally will not reverse an evidentiary ruling absent an abuse of discretion that materially prejudices the affected party. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 172; *State v. Hughes*, 10th Dist. No. 14AP-360, 2015-Ohio-151, ¶ 41.

Relevant Authority

**{¶48}** Evidence Rule 803(6)[5] creates a hearsay exception for certain business records. To qualify for admission under Evid.R. 803(6), the record must meet four requirements:

> **"(i) the record must be one regularly recorded in a regularly conducted activity; (ii) it must have been entered by a person with knowledge of the act, event or condition; (iii) it must have been recorded at or near the time of the transaction; and (iv) a foundation must be laid by the 'custodian' of the record or by some 'other qualified witness.' "**

---

[5] Evidence Rule 803(6) reads as follows:

> **The following are not excluded by the hearsay rule, even though the declarant is available as a witness:**
>
> **\* \* \***
>
> **(6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.**

*State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 170, quoting Weissenberger, *Ohio Evidence*, Section 803.73, at 600 (2007), quoting Evid.R. 803(6). A "qualified witness" is someone with "enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business." *State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, ¶ 40; *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493.

Analysis

**{¶49}** In this case, a pawn shop employee and two detectives testified regarding "LeadsOnline" reports, which are records that show individuals who have sold items to pawn shops and records as to what the individuals sold to the pawn shops. The trial court permitted the witnesses' testimony regarding "LeadsOnline" over objection by defense counsel.

**{¶50}** Risner argues that the trial court abused its discretion by permitting testimony regarding the "LeadsOnline" reports because none of the State's witnesses was able to articulate how "LeadsOnline" worked or how its records were maintained. He argues that none of the witnesses entered information into the "LeadsOnline" system, thus the records were not properly authenticated and they were not properly established as being maintained in the regular course of business.

**{¶51}** Contrary to Risner's argument, one detective testified at trial that he was familiar with "LeadsOnline," which was a system that allowed him to type in a

-21-

name and see if someone had sold an item to a pawn shop. The detective testified that he used LeadsOnline after Risner was identified as a potential suspect. When the detective ran Risner's name through LeadsOnline he found that Risner had pawned items in Richmond, Indiana. Using this information, the detective went to the pawn shop and found surveillance video of Risner pawning a welding helmet matching the description of a welding helmet that had been stolen.

{¶52} The detective also spoke to the pawn shop employee who engaged in the transaction with Risner, and the pawn shop employee testified at trial. The pawn shop employee testified that with every transaction he obtained the person's identification and entered the transaction into his system, though he was not sure how that information was transferred to LeadsOnline. Nevertheless, the pawn shop employee testified that he remembered Risner coming to the store. He also remembered a red truck, and multiple people who were outside with Risner.

{¶53} Another detective testified to his familiarity with LeadsOnline and he was specifically asked how the information was generated for the site and testified as follows:

> **I can tell you that – in the State of Ohio – every state's probably very similar, but in the State of Ohio it's governed by the Department of Commerce, so they are required to report to the LEADS law enforcement agency in their jurisdiction who is in there selling or pawning what items   Multiple people do it in different ways. It used to be you get stacks of tickets and they would have to take those to a law enforcement entity, right? But what they've done in the past, LeadsOnline was able to come in**

**and they interfaced with their systems, so within 24 hours roughly after that, their computer systems at their local pawns will upload into LeadsOnline. And that requires – that satisfies their requirement to report to their LEADS local law enforcement agencies because we have access to them.**

(Tr. at 610).

**{¶54}** Given the testimony of both detectives and the pawn shop employee, we do not find that it was an abuse of discretion for the trial court to determine that all of the requirements for the introduction of a business record were met in this matter. Testimony indicated that the pawn shop employee entered information into his system regarding the identity of the person selling an item and information on the item that was being sold at the time of the transaction, being a regularly recorded transaction at the time it occurred. A detective testified that the information was then generally uploaded to LeadsOnline, usually within 24 hours, which allowed law enforcement officers to search the information. There certainly could have been clearer testimony from witnesses more directly tied to LeadsOnline, but with a discretionary matter such as this, we do not find that the trial court's determination was arbitrary.

**{¶55}** Moreover, even if we determined that the testimony of both detectives and the pawn shop employee did not satisfy the requirements to introduce a business record into evidence under the hearsay exception, we do not find that there was any material prejudice in this matter. The pawn shop employee himself testified that he

remembered Risner and Risner was on video surveillance at the pawn shop selling a welding helmet that was specifically described by the witness from whom it had been stolen. Under these circumstances, there is no material prejudice. The LeadsOnline information is merely cumulative, and is not prejudicial even if it was erroneously admitted. *See State v.* Heft, 3d Dist. Logan No. 8-09-08, 2009-Ohio-5908, ¶ 72.

**{¶56}** Furthermore, the LeadsOnline report primarily led law enforcement to further investigate Risner's activity at the pawn shop, and it could have been admissible for that separate purpose. *See Stevens v. Mississippi*, 312 So.3d 1205, ¶ 10 (2021) (testimony regarding LeadsOnline was admissible to show next investigative step even if not for substantive purposes). For all of these reasons, Risner's fourth assignment of error is overruled.

*Conclusion*

**{¶57}** For the foregoing reasons Risner's assignments of error are overruled and the judgment of the Logan County Common Pleas Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and MILLER, J., concur.**

**/jlr**