[Cite as *State v. Franklin*, 2012-Ohio-4822.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98041**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LAYSHON C. FRANKLIN

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-555518

**BEFORE:** Rocco, J., Jones, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** October 18, 2012

-i-

**ATTORNEY FOR APPELLANT**

Patrick E. Talty
20325 Center Ridge Road
Suite 512
Rocky River, Ohio 44116

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Vincent I. Pacetti
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

KENNETH A. ROCCO, J.:

**{¶1}** Defendant-appellant Layshon C. Franklin appeals from his conviction for attempted murder. He presents two assignments of error in which he claims that his conviction is based upon insufficient evidence and is against the manifest weight of the evidence. Franklin contends that the evidence does not demonstrate his intent was to kill the victim.

**{¶2}** Following a review of the record, this court cannot agree. Consequently, Franklin's assignments of error are overruled and his conviction is affirmed.

**{¶3}** Franklin's conviction results from an encounter that occurred on the afternoon of October 2, 2011. According to the testimony presented by the state, the victim, Andre Blackmon, was standing on the front porch of the house where he lived when he saw Franklin arrive and park on the street. Franklin exited his car and made eye contact with Blackmon, then approached. Blackmon knew Franklin because Franklin had been in a relationship with Toria Allen, the woman who was currently inside Blackmon's house.

**{¶4}** Franklin stepped up onto a short row of bricks that separated Blackmon's house from the house next door and addressed Blackmon. Franklin asked if Blackmon was "still messing with Toria" and if she was inside his house. Blackmon answered affirmatively.

**{¶5}** Franklin then asked if he could speak with Allen. Blackmon went inside to inform Allen of Franklin's request. When Blackmon accompanied Allen onto the porch,

he took a position on the top of the steps. Allen took a more protected position; she stopped next to a porch post and behind the porch railing, farther from the place Franklin had remained. Both Blackmon and Allen noticed Franklin had one of his hands inside his "hoodie pocket."

{¶6} When Franklin spoke to Allen, he wanted to know if she and Blackmon were "together." Franklin told Allen he wanted her "to marry him," and gave her an ultimatum, i.e., she could "leave with [him] right now or [she] could stay here with [Blackmon]."

{¶7} Allen declared she was "with Andre," so she did not want to leave. Franklin asked Allen if she would come and give him a final hug. Allen stated, "No, I'm not coming down there to hug you."

{¶8} Franklin leapt to the ground, pulled a gun out from his sweatshirt, and fired the weapon twice at Blackmon. Blackmon was struck once in each leg; a bullet fractured his right femur. As Blackmon's legs began to collapse, Allen reached for him and grabbed him under his arms; she shouted for a neighbor to call police. Franklin had been "backpedaling" after firing the gun; he then ran to his car and drove away.

{¶9} An EMS unit arrived to transport Blackmon to the hospital. During their investigation of the scene, Cleveland police officers recovered two spent bullet casings near the front steps of Blackmon's home.

{¶10} Franklin subsequently was indicted on five counts, charged with attempted murder, two counts of felonious assault, carrying a concealed weapon, and having a

weapon while under disability. The first three counts contained firearm specifications, notices of prior conviction ("NPCs") and repeat violent offender specifications ("RVOs").

{¶11} Franklin executed a jury waiver with respect to the NPCs, RVOs, and the final count of the indictment. After the state presented its evidence, Franklin testified in his own defense; he denied being present when Blackmon was shot.

{¶12} The jury found Franklin guilty of attempted murder, felonious assault, and carrying a concealed weapon. The trial court also found him guilty of the remaining charges. Franklin received a prison sentence that totaled 12 years.

{¶13} Franklin appeals only his conviction for attempted murder. His two assignments of error state:

> **"I. The trial court erred in denying Appellant's motion for acquittal where the evidence was not sufficient to support [his] conviction.**
> **"II. The verdict finding Defendant-Appellant guilty of attempted murder is against the manifest weight of the evidence."**

{¶14} Franklin argues that his conviction for attempted murder is unsupported by either sufficient evidence or the manifest weight of the evidence. He claims the evidence did not establish that he intended to kill Blackmon.

{¶15} An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492

(1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541 (1997). The evidence must be viewed in a light most favorable to the prosecution. *Jenks* at 273.

{¶16} Franklin was charged with violating R.C. 2923.02(A) and R.C. 2903.02(A).[1] In order to convict a person of attempted murder, the state must prove that the defendant acted purposefully in attempting to take the life of another. This court previously has held that a jury may find intent to kill where the natural and probable consequence of a defendant's act is to produce death, and the surrounding circumstances support a conclusion that a defendant had a specific intention to kill. *State v. Brown*, 8th Dist. No. 92814, 2010-Ohio-661, ¶ 52, citing *State v. Clark*, 101 Ohio App.3d 389, 405, 655 N.E.2d 795 (8th Dist.1995).

{¶17} In this case, Franklin does not challenge the verdict of guilt on the charge of felonious assault, thus apparently conceding the sufficiency of the evidence to support his conviction on that count. *State v. Wilson*, 8th Dist. No. 97350, 2012-Ohio-1952, ¶ 36. The issue of whether Franklin's purpose was to kill rather than only to injure Blackmon was a disputed fact; the record supports either conclusion. *Id.* Nevertheless, when the

---

[1]These provide in relevant part, respectively, as follows:
"No person, purposefully or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
"No person shall purposely cause the death of another * * * ."

surrounding circumstances and testimony are viewed in a light most favorable to the state, a rational juror could conclude that Franklin intended to kill his romantic rival.

{¶18} Allen indicated Franklin refused to accept that their relationship was over. She testified that, when she told Franklin she intended to stay with Blackmon, Franklin asked her to come down and give him a hug. According to both Allen's and Blackmon's testimony, Allen refused Franklin's request, and Franklin was only a short distance away from Blackmon when he pulled out his gun and fired. The physical evidence showed that Franklin fired his gun twice at Blackmon, that both bullets struck Blackmon in his legs, and that both spent casings were found below the position where Blackmon stood.

{¶19} A natural and probable consequence of shooting at a person from close range is that the person will be shot and killed. *State v. Wilson*, 8th Dist. No. 96098, 2011-Ohio-5653, ¶ 6. Moreover, a reasonable juror could conclude that Franklin sought to remove Allen from the danger zone just before he eliminated his rival for her affections. Allen's testimony that she saw Franklin "backpedal" before turning to run indicates he wanted to observe the effects of his act, i.e., whether the shots were fatal, and what Allen would do.

{¶20} From the evidence presented by the state, Franklin's guilt of the offense of attempted murder was for a jury to determine. His first assignment of error is overruled.

{¶21} Franklin next argues that the manifest weight of the evidence does not support his conviction for attempted murder.[2] Based upon the record, his argument is unpersuasive.

{¶22} When a defendant asserts that his conviction is against the manifest weight of the evidence, the appellate court reviews the entire record, weighs the evidence and all reasonable inferences from it, considers the credibility of the witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The appellate court's discretionary power to reverse a verdict should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. *Id.* This court must remain mindful, moreover, that the weight of the evidence and the credibility of the witnesses are matters primarily for the jury to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

{¶23} This case does not present extraordinary circumstances. Blackmon gave concise testimony concerning the details of the incident and the injuries he suffered. His testimony was supported by Allen's, by the police photos, and by the physical evidence.

_____

[2]As contained in the body of Franklin's appellate brief, the second assignment of error challenges his conviction for "felonious assault." However, consistent with Franklin's "statement of the assignments of error," which challenges his conviction for attempted murder, the argument that follows pertains to his conviction for only attempted murder. This court therefore assumes the body of Franklin's appellate brief contains a typographical error.

{¶24} Franklin's testimony that he no longer cared for Allen was belied by a letter he wrote to her while he was awaiting trial in this case. In addition, Franklin's claims, i.e., that he was elsewhere during the incident, and that he "heard" that Blackmon was shot by "a guy named Kurt who later on killed himself," were both unbelievable and too convenient. Under these circumstances, the jury acted within its prerogative to discount his testimony. *State v. Williams*, 8th Dist. No. 68690, 1996 Ohio App. LEXIS 1411 (April 4,1996).

{¶25} Because Franklin's conviction is supported by the manifest weight of the evidence, his second assignment of error also is overruled.

{¶26} Affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, JUDGE

LARRY A. JONES, SR., P.J., and

MARY EILEEN KILBANE, J., CONCUR