[Cite as *State v. Winegarner*, 2023-Ohio-319.]

**[Please see vacated opinion at 2022-Ohio-4632.]**

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,         :

                                No. 111201

    v.                          :

RAPHELLE D. WINEGARNER,                  :

    Defendant-Appellant.        :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 2, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-648107-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Frank Romeo Zeleznikar, Caroline Nelson, and Oscar Albores, Assistant Prosecuting Attorneys, *for appellee*.

Rick L. Ferrara, *for appellant*.

ON RECONSIDERATION[1]

MICHELLE J. SHEEHAN, J.:

{¶ 1} Defendant-appellant Raphelle Winegarner appeals his convictions following a trial for attempted murder, felonious assault, having weapons while under disability, discharge of a firearm on or near prohibited premises, improperly handling a firearm in a motor vehicle, and carrying a concealed weapon. In challenging his convictions, Winegarner asserts his indictments were not based upon probable cause, the trial court should have held a hearing to determine his competency to stand trial, his conviction for attempted murder was not based upon sufficient evidence, and that his convictions were against the manifest weight of the evidence.

{¶ 2} We affirm Winegarner's convictions where the indictments in this case were valid on their face, the failure of the trial court to hold a hearing was harmless error because the record fails to reveal sufficient indicia of incompetency, and because the convictions were based upon sufficient evidence and were not against the manifest weight of the evidence presented at trial.

**PROCEDURAL HISTORY AND RELEVANT FACTS**

{¶ 3} On August 4, 2018, Christopher Adkins was shot in Cleveland, Ohio. Adkins received serious injuries and his leg was amputated as a result. Soon after

---

[1] The original decision in this appeal, *State v. Winegarner*, 8th Dist. Cuyahoga No. 111201, 2022-Ohio-4632, released on December 22, 2022, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

the shooting, Winegarner was arrested in East Cleveland, Ohio, and indicted in Cuyahoga C.P. No. CR-18-631496 for firearm offenses, drug trafficking, and drug possession. While Winegarner's charges from East Cleveland were pending, he was indicted for rape in Cuyahoga C.P. No. CR-18-635539 for events alleged to have occurred in 2006. On March 25, 2019, in Cuyahoga C.P. No. CR-19-638015, Winegarner was charged with crimes related to Adkins's shooting.

{¶ 4} On February 24, 2020, Winegarner was indicted in Cuyahoga C.P. No. CR-20-648107, the case from which Winegarner appeals. The indictment consolidated the charges in Case No. CR-18-631496 from his arrest in East Cleveland and Case No. CR-19-638015 alleging the crimes that occurred on August 4, 2018. The indictment also named Latasha Spencer as a codefendant. In total, Winegarner was charged with 15 offenses, to include charges of attempted murder, felonious assault, assault, weapons while under disability, discharge of a firearm on or near prohibited premises, drug trafficking and possession, improper handling of a firearm in a motor vehicle, and carrying concealed weapons along with one- and three-year firearm and repeated violent offender specifications.

{¶ 5} Winegarner's cases were assigned to and presided over by the same judge who was appointed to the Cuyahoga County Common Pleas Mental Health and Developmental Disabilities Court.[2] During the pendency of his cases, Winegarner was represented by three attorneys. Initially, Winegarner was

---

[2] At the time of these indictments, Winegarner had a pending case on the Mental Health and Developmental Disabilities docket, Cuyahoga C.P. No. CR-17-622860.

represented by appointed counsel who filed several substantive motions in the cases but did not raise an issue regarding Winegarner's competency to stand trial.

{¶ 6} Winegarner later retained counsel who filed a notice of appearance on August 29, 2019. On September 9, 2019, the trial court held a pretrial conference and journalized an entry referring Winegarner to the court psychiatric clinic for a competency evaluation at counsel's request. On October 28, 2019, a competency report was prepared in which the examiner found that Winegarner could appreciate the nature of the charges against him, but could not offer an opinion as to Winegarner's competence because the examiner could not determine whether Winegarner was unable to, or was unwilling to, assist counsel in his defense. The examiner recommended that Winegarner be further evaluated. That further evaluation did not occur, nor did the trial court hold a hearing to determine Winegarner's competency to stand trial.

{¶ 7} On Thursday, February 13, 2020, the week prior to a scheduled trial date, the trial court conducted a pretrial conference in which a plea offer was placed on the record. At that time, the trial court addressed Winegarner at length. After speaking with his attorney, Winegarner asked the court to allow him the ability to consider the plea agreement until Tuesday, February 18, 2020, the scheduled trial date. On the morning of trial, the trial court learned Winegarner's counsel suffered a medical emergency that prevented trial from commencing and discussed the effect of the continuance with Winegarner.

{¶ 8} On July 8, 2020, Winegarner retained new counsel who represented him through the conclusion of his cases. From May 3, 2021, through May 12, 2021, Winegarner was tried on the rape charges in Case No. CR-18-635539. During trial, Winegarner informed the trial court he would not testify and requested certain jury instructions regarding eyewitness testimony. Winegarner was acquitted of several charges, and the jury was hung on one count of the indictment.[3]

{¶ 9} From June 14, 2021, through June 23, 2021, trial was held in this case (Case No. CR-20-648107). Prior to trial, the trial court engaged Winegarner in a discussion before he elected to have the charges of having weapons while under disability, repeat violent offender specifications, and notices of prior conviction tried by the court and the remaining charges tried by a jury. Further, the trial court engaged in a discussion with Winegarner and his counsel regarding stipulations when Winegarner objected to his attorney stipulating to his identity.

{¶ 10} At trial, Christopher Adkins testified that in August 2018, he was employed at the Cleveland Motel on Euclid Avenue in Cleveland, Ohio. He resided at the motel with his girlfriend, Courtney Moore, and their six-month old son. In the early morning hours of August 4, 2018, Adkins was awoken by his girlfriend because someone was banging on the door. Adkins opened the door and asked the man banging on the door to calm down. He testified that he did not recognize the

---

[3] After Winegarner was convicted in the attempted murder case, he entered into a plea bargain on the remaining charge and the trial court had further occasion to observe and interact with him.

man. Adkins went back inside and heard banging again. Adkins went out again and realized the man was banging on a neighbor's door. That man then punched Adkins. He stated that he fell over a concrete barrier near the sidewalk and testified that while on the ground, he was kicked.

{¶ 11} Adkins ran from the motel toward the street, and the man followed. When Adkins got to the street, the man struck him again. Again Adkins fled. At that time, Adkins noticed the man approach a car and retrieve a firearm. He pleaded with the man not to shoot him, then turned and ran. Adkins was shot in the leg and knocked to the ground. While on the ground, Adkins testified:

> After he shoots me, I land in the street. He shoots again. I heard the gun go off one more time as he is walking, and I'm just laying in the middle of the street watching.

> He shoots it again and as soon as he get to the car, he shoots it one more time and thank God he missed all three times that he shot when he was walking. He didn't run too far and casually walked to the car and didn't do nothing. He walked to the car then, turn would be like a left on Euclid and go down towards Euclid Avenue.

(Tr. 361.)

{¶ 12} During his testimony, Adkins identified surveillance camera footage that detailed the initial assault, his run through the parking lot, and then his run across the street. Adkins also testified that he initially identified a male named Dae-Dae from a photo lineup provided by the police. Adkins stated he identified Dae-Dae because he heard that Dae-Dae was the man who shot him. He also stated that Dae-Dae resembled the man that shot him and that Dae-Dae and the man who shot him both have neck tattoos. The police later asked Adkins to view a second photo

lineup. Adkins identified Winegarner in the lineup and in court as the man who shot him.

{¶ 13} Latasha Spencer, Winegarner's codefendant testified. In exchange for her testimony, the charges against her were dismissed. Spencer has four children with Winegarner. She stated that on the night of August 3, 2018, into the morning hours of August 4, 2018, she was with Winegarner. Winegarner was wearing jeans, a white t-shirt, and a gray hoodie. She said that they were with her friend and that after visiting a friend's house, they went to a bar in Cleveland, then to a gas station, and then to the Cleveland Motel.

{¶ 14} While at the motel, Winegarner saw his friend Dae-Dae. Dae-Dae was later identified by the police as Dashun Pippen. She stated both Winegarner and Dae-Dae are light skinned and have neck tattoos. Winegarner argued with Dae-Dae, Dae-Dae tried to leave, but Winegarner kept approaching him. Dae-Dae then pulled a gun out and fired a round into the ground. Winegarner got into Spencer's car, and they left. They went to a friend's house and realized Spencer's friend was not with them. They went back to the motel to find her. There, Winegarner began banging on doors and Spencer saw Winegarner get into an argument with someone who ran from the motel. She said Winegarner pursued him.

{¶ 15} Spencer followed Winegarner in her car. She testified Winegarner came back to her car and got a gun, which she said she did not know he had. After he took the gun, Winegarner went after the man. Spencer heard one or two gunshots but did not see what happened. When Winegarner returned to the car, Spencer

asked him if he shot the man; Winegarner said that he got him in the back. Winegarner told Spencer to go back to the gas station they had been at earlier.

{¶ 16} Spencer went to the gas station and testified that Winegarner argued with someone there. She said that she told Winegarner she was ready to leave and they left the gas station. As they were leaving, they were pulled over by East Cleveland police. Although Winegarner told her to flee, she stopped and got out of the car. Spencer testified Winegarner was acting crazy and arguing with police. She stated that the police searched her car and found the gun. During her testimony, Spencer viewed surveillance footage from the motel. She identified her car in the footage as well as identifying Winegarner.

{¶ 17} Ricky Jolly testified that he was living at the Cleveland Motel and that on August 4, 2018, a man banged on his window. When he looked out the window, the man yelled, "Is my b**** in there?" and Jolly told the man he had the wrong room, but the man continued to bang on the window. Jolly opened the door to go outside and saw his neighbor come outside and tell the man to leave them alone. The man punched his neighbor, and his neighbor tried to run away. Jolly said he went into his room to get shoes and heard at least two gunshots. Jolly testified the police presented him with two lineups and that he identified someone in both. In the first lineup, he identified a man due to his neck tattoos. In the second lineup, he identified a different man, Winegarner, because of his eyes.

{¶ 18} Cleveland Police Officer Orlando Rivera testified that the Cleveland Motel is known for drugs, prostitution, and shootings. At 4:47 a.m. on August 4,

2018, he and his partner received a call for shots fired in the area of Euclid Avenue and Clarksdale. They arrived and found other officers assisting a male with a gunshot wound. Officers interviewed Jolly and learned that an altercation took place. Officer Rivera viewed the surveillance video that corroborated Jolly's account. Cleveland Police Officer Elaina Ciacchi testified that she responded to the call for a shooting and found a male in the street who was shot. She rendered aid and applied a tourniquet to the victim's leg. Cleveland Emergency Medical Services Paramedic Matthew Lanzaretta testified that he arrived on scene and attended to the male who was shot. Paramedic Lanzaretta stated that the patient's condition was critical and life-threatening due to the amount of blood he lost. The patient was unresponsive, and paramedics had to use a bag valve mask to assist the patient's breathing.

{¶ 19} Cleveland Police Detective Todd Clemens testified that he arrived at the scene of the shooting. While there he testified that he noted the large pool of blood on Euclid Avenue. He also testified that he saw a jacket and a cell phone and that he located a damaged bullet in a driveway that led to the street where the blood was. Detective Clemens photographed the scene, took swabs of blood from the street, and swabbed the exterior door of a room at the motel for later DNA testing.

{¶ 20} East Cleveland Police Officer Preston Nimon testified that at 4:53 a.m. on August 4, 2018, he was dispatched to the Express Gas station on Euclid Avenue in East Cleveland, Ohio, for a complaint that a male was threatening the clerk with a firearm. When he arrived, the clerk directed him to a vehicle, a red SUV,

for the man they were looking for. Officer Nimon initiated a traffic stop of the vehicle. He testified that Spencer was driving and that Winegarner was in the front passenger seat, identifying Winegarner in court. Officer Nimon testified that he ordered Winegarner out of the vehicle multiple times; at first, he did not comply, but eventually got out of the vehicle. Winegarner did not comply with officers' orders once out of the vehicle. Winegarner had to be restrained to be taken into custody. Officer Demarko Johnson of the East Cleveland Police Department testified that he responded to the gas station and assisted with the arrest of Winegarner, whom he identified in court. Officer Johnson also testified that the gas station was less than a five-minute drive from the Cleveland Motel.

{¶ 21} East Cleveland Police Officer John Hartman testified that he assisted with the stop of Spencer's vehicle. He stated the license plate on the vehicle was not registered to the vehicle. Because of the fictitious plates, the vehicle was towed. Prior to towing the vehicle from the scene, Officer Hartman searched it and found a pill bottle with suspected drugs, marijuana, and a .44-caliber Ruger handgun on the floor behind the driver's seat.

{¶ 22} Cleveland Police Detective Bruce Kirchner was assigned to investigate the shooting. He collected the surveillance video from the Cleveland Motel. He also interviewed Adkins while he was in the hospital and learned of the name, Dae-Dae. Detective Kirchner later learned from Cleveland Police Detective Donald Kopchak that Dae-Dae is a name used by Pippen. Detective Kirchner prepared a photo lineup that contained Pippen and had Adkins view the lineup a few days after the shooting;

Adkins identified Pippen. Detective Kirchner prepared charges based on the identification and later interviewed Pippen. While interviewing Pippen, Detective Kirchner learned Winegarner may be a suspect, and therefore, he investigated Winegarner's possible involvement. The charges against Pippen were later dismissed.

{¶ 23} Detective Kirchner testified that he prepared a second lineup that included Winegarner. The lineup was presented to Adkins, and he identified Winegarner. Detective Kirchner discovered that Winegarner was arrested in East Cleveland on August 4, 2018. He noted that the car Winegarner was arrested in was similar to the car Winegarner was in at the motel. When he learned that a firearm was found during the arrest, he obtained the firearm and sent it for forensic examination so that it could be compared to the bullet fragment recovered at the scene. Kristen Koeth testified that she is a firearm and toolmark examiner and that she examined a .44-caliber Ruger firearm that was submitted for testing for comparison to a bullet fragment. She testified that the bullet fragment was fired from the Ruger firearm.

{¶ 24} Detective Kopchak testified that he was assigned to a vice unit and was familiar with Dashun Pippen. Detective Kopchak received still photos from the surveillance video from the Cleveland Motel. He initially believed that the photos showed Dashun Pippen. He interviewed Pippen and conducted a search of Pippen's home; no weapons were located. During the interview, Detective Kopchak became aware of Winegarner. Detective Kopchak later reviewed the video surveillance as

well as Winegarner's photo and determined that the male in the video was Winegarner, not Pippen. Detective Kopchak also testified that he learned that Winegarner was arrested shortly after the shooting in East Cleveland, approximately a mile away.

{¶ 25} On June 24, 2021, at the conclusion of trial, Winegarner was acquitted of the drug trafficking and possession charges. The jury and the trial court convicted him of the remaining charges in the indictment. On September 9, 2021, the trial court held a sentencing hearing and determined that several of the charges were allied offenses and merged those counts. The trial court imposed an aggregate sentence of 33 years in prison.[4]

{¶ 26} We granted Winegarner leave to file the instant appeal and a motion to supplement the record in this case with the record in Case No. CR-19-638015. We also granted the state leave to supplement the record with the proceedings in the rape case, Case No. CR-18-635539.

## LAW AND ARGUMENT

**The indictment upon which Winegarner was tried was valid**

{¶ 27} Winegarner raises four assignments of error that we address out of order. Winegarner's fourth assignment of error reads:

> The indictment of Winegarner failed to comply with constitutional and other requirements of law, was without probable cause, and therefore deprived the court of subject matter jurisdiction over appellant.

---

[4] Winegarner does not contest the sentence imposed in his appeal.

{¶ 28} Winegarner argues that the indictment was without probable cause because the victim and witness identified another suspect, that suspect was charged, and, at the time of the indictment, the grand jury did not have ballistics reports tying the firearm found to the shooting. The state argues that the return of an indictment that is valid on its face is not subject to challenge due to inadequate or incompetent evidence.

{¶ 29} The Ohio Supreme Court held that "[a]n indictment meets constitutional requirements if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *State v. Childs*, 88 Ohio St.3d 558, 565, 728 N.E.2d 379 (2000), quoting *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

{¶ 30} Winegarner does not contest that the indictments set forth crimes upon which the trial could proceed and acknowledges that "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956). In a case in which a defendant challenged an indictment on the basis of

insufficient evidence being presented to a grand jury,[5] this court rejected that challenge, finding that "an indictment, fair upon its face, and returned by a properly constituted grand jury, conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged therein." *Hill* at ¶ 25, citing *Gerstein v. Pugh*, 420 U.S. 103, 117, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Our examination of the indictment reflects that the charges within the indictment are valid on their face.

{¶ 31} The fourth assignment of error is overruled.

**The failure to conduct a competency hearing was harmless error**

{¶ 32} In his first assignment of error, Winegarner challenges the trial court's failure to conduct a competency hearing. It reads:

> Appellant was denied due process of law by failure of the court or counsel to sufficiently determine appellant's competence prior to trial.

{¶ 33} In this case, the competency report concluded that Winegarner could understand the nature and objectives of his charges, but the examiner could not make a determination whether Winegarner did not want to, or could not, assist in his defense. Winegarner argues that in addition to his second attorney seeking a competency evaluation, the record contains indicia of his incompetence and that the court's failure to hold a competency hearing constituted reversible error. The state argues that Winegarner was able to assist counsel through two trials and that the

---

5 In *State v. Hill*, 2015-Ohio-2389, 37 N.E.3d 822 (8th Dist.), the defendant challenged the indictment on the basis that the grand jury based its probable cause determination on a preliminary DNA test and that as such, the indictment was based on insufficient evidence. *Id.* at ¶ 16.

record does not contain sufficient indicia of Winegarner's incompetence that mandated a hearing. The state asserts that the record demonstrates that the concern by the competency examiner as to Winegarner's willingness or inability to assist counsel was disproved where Winegarner was able to, and in fact did, assist counsel through two trials.

{¶ 34} A defendant is presumed to be competent unless it is demonstrated by a preponderance of the evidence that he is incapable of understanding the nature and objective of the proceedings against him or of presently assisting in his defense. R.C. 2945.37(G). Winegarner's second counsel sought a determination of competency to stand trial pursuant to R.C. 2945.37(B). Where the issue of competency is raised before trial, the court shall hold a hearing. Failure to hold a hearing is error; however, "'failure to hold a mandatory competency hearing is harmless error where the record fails to reveal sufficient indicia of incompetency.'" *State v. Almashni*, 8th Dist. Cuyahoga No. 92237, 2010-Ohio-898, ¶ 13, quoting *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986), citing *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

{¶ 35} In *State v Hough,* Slip Opinion No. 2022-Ohio-4436, the Ohio Supreme Court reaffirmed its prior holding in *Bock* that "whether a trial court's failure to hold a competency hearing is reversible error is to be determined on a case-by-case basis." *Id*. at ¶ 28. Where a competency hearing is not held, the right to a hearing would be constitutionally mandated where the record contains sufficient evidence of incompetence demonstrating that a competency determination is

necessary to preserve a defendant's right to a fair trial. *Almashni* at ¶ 13, citing *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 156. Emotional or mental instability is not determinative of whether a defendant is incompetent to stand trial; a defendant who may be disturbed or psychotic can still be capable of understanding the charges against him and of assisting counsel. *Almashni* at ¶ 13.

{¶ 36} In *Hough*, the Ohio Supreme Court recently reversed a defendant's convictions where counsel requested a competency report that was denied by the trial court and where indicia of the defendant's incompetency were present in the record. The plurality opinion found those indicia included a psychiatric report prepared for sentencing that indicated the defendant could not provide the day of the week, date, month, or year during the examination, held delusional beliefs, and was having auditory hallucinations. *Id.* at ¶ 32. Additionally, the report indicated that defendant had severe mental illness and limited intellectual/cognitive functioning. *Id.* at ¶ 34. Further, at the sentencing hearing, defendant's counsel reported defendant responded to external stimuli to make counsel question the defendant's competence. *Id.* at ¶ 35. We are mindful of these standards in our examination of the record.

{¶ 37} The record before us consists of three cases, Cuyahoga C.P. No. 19-638015, indicted in March 2019, and later reindicted as Cuyahoga C.P. No. 20-648107, as well as Cuyahoga C.P. No. CR-18-635539. Winegarner was represented by appointed counsel from March 2019. Appointed counsel filed several motions in the cases but did not raise the issue of competency. On

August 29, 2019, Winegarner's retained counsel filed a notice of appearance. On September 9, 2019, a pretrial was held with Winegarner's retained counsel and the court journalized an entry referring Winegarner for a competency evaluation at his request.[6]

{¶ 38} On July 8, 2020, Winegarner retained new counsel. On September 24, 2020, a pretrial hearing was held on the record. At the conclusion of the hearing, the trial court asked Winegarner whether he was taking his medication, how he was feeling, and if he had any questions. Winegarner indicated he was fine and had no questions for the court. Throughout the pendency of the cases, the trial court had a significant amount of time to observe and interact with Winegarner.

{¶ 39} From May 3, 2021, through May 12, 2021, Winegarner was tried on the rape charges. From June 14, 2021, through June 23, 2021, trial was held in the attempted murder case. At no time during these trials does the record indicate Winegarner was unable to assist counsel nor did counsel raise Winegarner's competency. We recognize that Winegarner has a history of mental illness. The best practice for the trial court would have been to resolve any issue of competency at a hearing before conducting trial. However, no hearing was conducted in this case. Therefore, at issue in this appeal is whether the record reveals sufficient indicia of incompetency that would render his trial unfair. *Hough*, Slip Opinion No. 2022-Ohio-4436, at ¶ 28, 32; *Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016, at syllabus.

---

[6] In the three cases comprising the record before us, a written motion for a competency evaluation was not filed.

{¶ 40} Winegarner's competency was raised by his second counsel in these cases, and an examination was conducted. In addition to the findings in the competency report, Winegarner argues that his history of mental illness provides evidence he was incompetent. Further, he claims his decision to reject a global plea bargain and go to trial suggests incompetency due to the significant evidence to be brought at trial that included high-definition video footage, his arrest shortly after the crime in the same clothes as seen in the video, the firearm recovered at the time of his arrest, and eyewitness testimony from three witnesses.

{¶ 41} The competency examiner neither determined Winegarner to be competent or incompetent to stand trial. The examiner reported Winegarner was not happy with counsel and questioned his need to assist counsel who was retained. The examiner determined that it was "unclear" whether Winegarner's attitude toward his attorney was volitional and stemmed from anger at his present situation or was a product of his intellectual disability or provisional-psychotic disorder. Thus, our review of the record focuses on whether there is evidence Winegarner did or did not have the ability to assist counsel.

{¶ 42} In *Almashni*, 8th Dist. Cuyahoga No. 92237, 2010-Ohio-898, at ¶ 14, the defendant's original attorney requested a competency evaluation and thereafter was represented by a second and third attorney, neither raising the issue of competency. Similarly in this case, following the competency examination, the attorney who raised the issue of his competency did not further raise the issue to the trial court. Thereafter, Winegarner was represented by a separate attorney for

approximately a year who conducted two lengthy trials and who did not raise the issue of Winegarner's competency or his ability to assist in his defense.

{¶ 43} Additionally, in contrast to the facts the Ohio Supreme Court found to be sufficient indicia of incompetency in *Hough*, Slip Opinion No. 2022-Ohio-4436, to warrant a hearing, in this case, Winegarner was not reported to be presently delusional, suffering hallucinations, or unable to understand the proceedings during the pendency of the proceedings. Winegarner was active at trial, discussed his decision to try certain charges to the court, objected to stipulations by his attorney, and also voiced objections to certain jury instructions. The record reflects that the trial court had a significant amount of time to observe and interact with Winegarner throughout the pendency of the cases, including two lengthy trials and there is no indicia Winegarner did not or could not assist counsel. With hindsight, Winegarner argues his decision to proceed to trial may be indicia of incompetence. However, Winegarner's failure to enter a plea bargain is not necessarily evidence of incompetence, especially in light of the fact that he received a favorable outcome in the rape trial.

{¶ 44} Although the trial court could have avoided any error and conclusively resolved any issue regarding Winegarner's competence before trial, we determine if there is reversible error on a case-by-case basis. *Id*. at ¶ 28, citing *Bock*, *supra*. In this case, we do not find sufficient indicia of incompetence in the record that would allow us to find Winegarner's trial unfair for the reasons questioned in the competency report.

{¶ 45} The first assignment of error is overruled.

**There was sufficient evidence of the crime of attempted murder and Winegarner's convictions were not against the manifest weight of the evidence**

{¶ 46} Within his second and third assignments of error, Winegarner challenges his convictions as being both based on insufficient evidence and against the manifest weight of the evidence. The second and third assignments of error read:

The state presented insufficient evidence of appellant's guilt of attempted murder.

The manifest weight of evidence did not support a conviction of appellant.

{¶ 47} Winegarner contests the sufficiency of the evidence as to only his conviction for attempted murder. He argues that the evidence was insufficient to show he had attempted to kill Adkins. The state argues that the evidence that Winegarner shot the victim and then fired three more times while walking away from the scene is sufficient to support the conviction for attempted murder. As to the remaining convictions, Winegarner argues that they are all against the manifest weight of the evidence, contesting his identification. The state argues that the evidence was conclusive that Winegarner committed the crimes for which he was convicted, citing the victim's and witnesses' identification, his codefendant's testimony, and that Winegarner was identifiable on the security camera footage.

{¶ 48} We review a challenge to the sufficiency of evidence and determine whether the evidence admitted at trial, if believed, would convince the average

person of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* When reviewing the evidence, we are mindful that circumstantial and direct evidence "possess the same probative value." *Id.* at 272. Our review of the evidence is not to determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶ 49} In contrast, our review of a challenge to the manifest weight of the evidence after a criminal conviction questions whether the state met its burden of persuasion in obtaining a conviction. *Thompkins* at 390. Further, the manifest weight challenge raises factual issues:

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Townsend*, 8th Dist. Cuyahoga No. 107177, 2019-Ohio-544, ¶ 20.

{¶ 50} Winegarner was charged with the attempted murder of Adkins in violation of R.C. 2923.02(A) and 2903.02. To convict a defendant of attempted murder, the state is required to prove the defendant acted with purpose in attempting to take the life of another. *State v. Franklin*, 8th Dist. Cuyahoga No. 98041, 2012-Ohio-4822, ¶ 16. "[A] jury may find intent to kill where the natural and probable consequence of a defendant's act is to produce death, and the surrounding circumstances support a conclusion that a defendant had a specific intention to kill." *Id.*, citing *State v. Brown*, 8th Dist. Cuyahoga No. 92814, 2010-Ohio-661, ¶ 52. Further, a natural and probable cause of shooting a person is that "the person will be shot and killed." *Id.* at ¶ 19.

{¶ 51} Winegarner argues that the evidence at trial was insufficient to convict him of attempted murder where the evidence was that the perpetrator shot the victim in the leg but took no further actions to ensure Adkins died, even though the opportunity to do so was present. In this case, the evidence was that Adkins was shot while fleeing his assailant and that the injury was life-threatening. Once Adkins was disabled, the perpetrator fired more shots while retreating the scene. When construing the evidence in the light most favorable to the state, evidence that the victim was shot in the leg, suffered a life-threatening injury, and the perpetrator fired three more shots was sufficient to allow the jury to determine whether the crime of attempted murder was committed.

{¶ 52} In considering whether the convictions were against the manifest weight of the evidence, Winegarner cites the credibility of the identification

witnesses, asking us to focus on the initial identification of Pippen by Adkins, Jolly, and Detective Kopchak. He further cites inconsistencies in Spencer's testimony at trial and her prior statements. The jury heard evidence of the initial identification of Pippen and the circumstances surrounding those identifications and had an opportunity to hear and view the witnesses. "Although the reviewing court considers the credibility of witnesses in a challenge to the manifest weight of the evidence, it does so 'with the caveat that the trier of fact is in the best position to determine a witness' credibility through its observation of his or her demeanor, gestures, and voice inflections.'" *Townsend*, 8th Dist. Cuyahoga No. 107177, 2019-Ohio-544, at ¶ 21, quoting *State v. Campbell*, 8th Dist. Cuyahoga Nos. 100246 and 100247, 2014-Ohio-2181, ¶ 39.

{¶ 53} In addition to the eyewitness testimony, Winegarner's identification could be determined by reference to the surveillance footage, testimony and photos taken of his arrest, and by the ballistics evidence tying the bullet fragment from the scene of the shooting to the gun recovered from Spencer's car. Given the testimony of Winegarner's identity as the perpetrator of the crimes charged and the corroborative evidence of his identity, we cannot say that Winegarner's convictions are a product of the jury losing its way or that a miscarriage of justice has occurred.

{¶ 54} The second and third assignments of error are overruled.

### CONCLUSION

{¶ 55} In challenging his convictions, Winegarner asserts his indictments were not based upon probable cause; however, they are valid on their face. Although

the trial court should have held a hearing to determine his competency to stand trial once raised, the trial court's failure to hold a competency hearing is not error where the record does not contain sufficient indicia of incompetence. In reviewing Winegarner's conviction for attempted murder, we find sufficient evidence was presented to the jury that would allow it to find him guilty of the crime charged. Further, Winegarner's convictions were not against the manifest weight of the evidence presented at trial.

**{¶ 56}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MICHELLE J. SHEEHAN, JUDGE

ANITA LASTER MAYS, A.J., and
MICHAEL JOHN RYAN, J., CONCUR