**[Cite as *State v. Carroll*, 2024-Ohio-628.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,

   v.

TERESA CARROLL,

      DEFENDANT-APPELLANT.

CASE NO. 3-23-33

**O P I N I O N**

Appeal from Crawford County Common Pleas Court
Trial Court No. 22-CR-0368

**Judgment Affirmed**

**Date of Decision: February 20, 2024**

APPEARANCES:

   *Howard A. Elliott* **for Appellant**

   *Daniel J. Stanley* **for Appellee**

**MILLER, J.**

{¶1} Defendant-appellant, Teresa Carroll ("Carroll"), brings this appeal from the July 14, 2023, judgment of the Crawford County Common Pleas Court convicting her of obstructing justice in violation of R.C. 2921.32(A)(3). On appeal, Carroll argues there was insufficient evidence presented to convict her and that her conviction was against the manifest weight of the evidence. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} On November 15, 2022, Carroll was indicted for obstructing justice in violation of R.C. 2921.32(A)(3)/(C)(3), a felony of the fifth degree. She pled not guilty to the charge and proceeded to a jury trial on July 13, 2023. After the evidence was presented, the jury found Carroll guilty of obstructing justice as charged. Carroll was then sentenced to serve nine months in prison. A judgment entry memorializing her conviction and sentence was filed July 14, 2023. It is from this judgment that Carroll appeals, asserting the following assignment of error for our review.

**Assignment of Error**

**The Defendant/Appellant's conviction for obstructing justice is not supported by sufficient evidence and it is against the manifest weight of the evidence both in respect to the degree of the offense claimed to have been committed by the parties that the Defendant/Appellant was aiding and as to the evidence generally**

**requiring the vacating of the sentence and the matter must be reversed and remanded to the trial court.**

{**¶3**} On appeal, Carroll argues that there was insufficient evidence presented to convict her, and that her conviction was against the manifest weight of the evidence. Although argued together in Carroll's brief, sufficiency and manifest weight are distinct legal concepts, so we will address them separately after setting forth the applicable standards of review and a summary of the evidence presented at trial.

Standards of Review

{**¶4**} "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Groce*, 163 Ohio St.3d 387, 2020-Ohio-6671, ¶ 6. Therefore, our review is de novo. *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, ¶ 3. In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow *any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus (superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 102, (1997), fn. 4) following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

**{¶5}** By contrast, in reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing so, this court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*.

**{¶6}** Nevertheless, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

Controlling Statute

**{¶7}** In this case, Carroll was convicted of obstructing justice in violation of R.C. 2921.32(A)(3)/(C)(3), which reads:

> (A) No person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime or to assist another to benefit from the commission of a crime * * * shall do any of the following:

* * *

(3) Warn the other person or child of impending discovery or apprehension;

* * *

(C)(1) Whoever violates this section is guilty of obstructing justice.

* * *

(3) * * * [I]f the crime committed by the person aided is a felony * * * obstructing justice is a felony of the fifth degree.

### Evidence Presented by the State

**{¶8}** Detective Tyler Winkleman of the Crawford County Sheriff's Office testified that he received information that Carroll's daughter, Jessica, and a man named Jalil, also known as "Thug," were selling and using drugs in Carroll's home in Galion on the weekends. Detective Winkleman testified that two controlled drug buys of cocaine were made from Jalil at Carroll's residence.

**{¶9}** On November 3, 2022, following the controlled buys, the police kept the residence under surveillance while Detective Winkleman left to procure a search warrant. During the detective's absence, Jalil left the residence multiple times and walked to a house on the corner and then came back. When Jalil was outside the residence, he was arrested. By 8:26 p.m., Jalil was in custody.

**{¶10}** Carroll was at work approximately 30 minutes away during Jalil's arrest, but her daughter Jessica was at Carroll's home. After Jalil was arrested,

officers knocked on the doors and windows of the residence but Jessica would not come outside. Jessica had two active warrants for her arrest.

{¶11} Meanwhile, Carroll learned that the police were outside her residence. She called the Galion Police and the Crawford County Sherriff's Office and was able to confirm that the police were at her residence but she could not find out why. Carroll called her daughter Jessica and spoke with Jessica on the phone at 8:39 p.m. for approximately 4 minutes. Then, at 9:01 p.m., Carroll sent a text message to Jessica stating "They got thug." (State's Ex. C5). Fifteen seconds later Carroll sent a second text message to Jessica that read: "Erase your phone." (*Id.*)

{¶12} Jessica eventually came out of the house willingly, leaving her cell phone on her bed. Carroll's home was searched and officers located digital scales in Carroll's bedroom. They also located a "sandwich bag that had some white residue that looked like it was attempted to get poured down the sink" in a bathroom "parallel to Jessica's room[.]" (Tr. at 139).

{¶13} In the course of the investigation, Jessica and Jalil's phones were searched. From this search, it was learned that the conversations between Jessica and Jalil had been deleted from Jessica's phone.

{¶14} On November 9, 2022, Jessica called Carroll from jail and that call was recorded. On the call, Jessica told Carroll to use Google to see if law enforcement could find deleted text messages on a cell phone. Jessica then said to

Carroll, "remember what you told me to do that night?" After searching, Carroll told Jessica that law enforcement could get deleted text messages. Jessica then asked Carroll to speak with the phone's owner to see if he could do anything.

{¶15} The same day of the jailhouse call, Carroll sent a text message to the owner of the phone, Michael, asking if he could get into the "Spectrum app" and "report the phone lost or stolen and wipe it out and delete it so that none of the information on that phone can be retrieved[.]" (Tr. at 133).

{¶16} Once Detective Winkleman learned that Carroll had instructed Jessica to delete text messages, he brought Carroll in for an interview. During the interview, Carroll stated that she initially told Jessica to hide in the basement. Carroll stated that once she learned Jessica was going to go outside anyway, she urged her to go out before the police broke down her door. Carroll claimed the only reason she told Jessica to delete the text messages was so officers would not see that Carroll told Jessica to hide from the police.

Evidence Presented by the Defense

{¶17} Carroll testified in her own defense, emphasizing that her daughter Jessica had serious drug issues. Carroll testified that Jessica had overdosed multiple times. Carroll testified that Jessica had only recently moved into Carroll's residence.

{¶18} As to the text messages, Carroll claimed she told Jessica to delete the text messages so Michael would not see them. Michael apparently paid for the

phone and various other things in Jessica's life, and Carroll was afraid Michael would find out about Jalil.

**{¶19}** Carroll acknowledged she had a prior felony conviction for illegal conveyance in 2009. She claimed to have been law-abiding since then. However, when confronted with three misdemeanor theft convictions in the past several years, Carroll claimed she could not remember them. Carroll testified that Jessica was now in prison for a felony drug conviction based on what had occurred.

Sufficiency Analysis

**{¶20}** Carroll contends the State presented insufficient evidence to convict her of obstructing justice. She focuses her argument on the enhancing element contained in R.C. 2921.32(C)(3), which indicates that if the State proves beyond a reasonable doubt that the crime committed by the person aided is a felony, then obstructing justice is a felony of the fifth degree. Carroll argues the State presented no evidence whatsoever regarding the underlying offense, thus, at most, she could only be convicted of a misdemeanor under R.C. 2921.32(C)(2).

**{¶21}** Contrary to Carroll's argument, the State presented evidence that Jessica and Jalil were involved in trafficking cocaine, with two controlled buys occurring at Carroll's residence. Detective Winkleman specifically testified that trafficking drugs other than marijuana was a felony in the following segment:

> [Defense Counsel]. And understand we are not talking about selling of marijuana, we're talking about the selling of other drugs?

A. Both illegal, but, yes.

Q. One's a misdemeanor, one's a felony?

A. Both illegal, but, yes.

(Tr. at 151). We note that contrary to defense counsel's question, trafficking/selling "marihuana" is a felony, so the premise of defense counsel's question was actually incorrect. Only *gifting* marihuana constitutes a misdemeanor in certain circumstances. R.C. 2925.03(C)(3)(h). Regardless, there was testimony presented that the crime committed by the person aided was a felony.

{¶22} Carroll next argues she did not obstruct justice at all because there was no indication she was trying to prevent Jessica from being discovered or apprehended. Carroll also claims she did nothing to interfere with her daughter's arrest.

{¶23} However, once Carroll learned the police were at her residence, Carroll sent Jessica a text message informing her that "Thug" had been arrested and Jessica should delete her phone conversations with him. Carroll also told law enforcement officers she instructed Jessica to hide from the police either on the phone or via text message. (State's Ex. A; B). Importantly, R.C. 2921.32(A)(3) "merely requires that [the defendant] warn [another] of impending discovery or apprehension; it does not require any particular response to the warning[.]" *State v. Seijo*, 11th Dist. Ashtabula No. 2011-A-0011, 2012-Ohio-645, ¶ 47, citing *State v.*

*Mercado,* 8th Dist. Cuyahoga No. 84559, 2005–Ohio–3429, ¶ 20. A reasonable factfinder could determine that Carroll's text messages and the phone call constituted a warning.

**{¶24}** Moreover, a reasonable factfinder could determine the various communications Carroll had with Jessica were intended to warn Jessica to prevent her discovery. Furthermore, separate from the first instance, Carroll sent a message to the owner of Jessica's phone to delete all the history and report it stolen well after Jessica was arrested. When viewing this evidence in the light most favorable to the State, a reasonable factfinder could determine that Carroll was acting with purpose to hinder her daughter's prosecution for a crime.

**{¶25}** We note that Carroll cites *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, as support for her argument; however, *Pelfrey* dealt with deficient verdict forms where the verdict form did not contain the element enhancing the offense to one of a greater degree. Here, however, the verdict form specifically required the jury to find "beyond a reasonable doubt that the crime committed by the aided person WAS a felony." (Doc. No. 21). Therefore, *Pelfrey* is entirely inapplicable to this case. Further, the verdict forms establish that the jury clearly found the crime committed by the person aided was a felony.

**{¶26}** In sum, given all the evidence that was presented, and when looking at the evidence in the light most favorable to the State as we are directed, we do not

find there was insufficient evidence presented to convict Carroll of obstructing justice as a felony of the fifth degree.

Manifest Weight Analysis

**{¶27}** Carroll contends that even if there was sufficient evidence presented to convict her of obstructing justice, her conviction was against the manifest weight of the evidence. Carroll argues that the State did not present evidence that Jessica or Jalil was convicted of a trafficking crime. In support, she cites *State v. Bronaugh*, 69 Ohio App.2d 24, 25, 429 N.E.2d 1084, 1086 (1st Dist.1980), which held, "The crime of obstructing justice cannot be committed without the commission of an underlying crime by another, here the crime of trafficking in drugs." *Bronaugh* is readily distinguishable, however, because Carroll herself testified that Jessica had been convicted of a felony and sentenced to prison as a result of what occurred in this case. Further, the detective testified that trafficking in cocaine was a felony.

**{¶28}** Finally, we emphasize that the jury was able to see and hear the testimony of Carroll, and evaluate her story both at trial and in the video of her interview. The jury was free to disbelieve Carroll's minimizing statements. *State v. Smith*, 2023-Ohio-3015, 223 N.E.3d 919, ¶ 29 (3d Dist.). Simply put, this is not one of the rare cases where the evidence weighs heavily against the conviction. Therefore, Carroll's assignment of error is overruled.

*Conclusion*

**{¶29}** Having found no error prejudicial to Carroll in the particulars assigned and argued, her assignment of error is overruled and the judgment and sentence of the Crawford County Common Pleas Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/hls**